MANDATE

19-1132-cv  
*Axar Master Fund, Ltd., et al v. Bryan K. Bedford, Joseph P. Allman*

1:17-cv-00426-LAK

UNITED STATES COURT OF APPEALS  
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of March, two thousand twenty.

PRESENT:   GERARD E. LYNCH,  
           DENNY CHIN,  
                   *Circuit Judges*,  
           PAUL A. ENGELMAYER,  
                   *District Judge*.[*]

USDC SDNY  
DOCUMENT  
ELECTRONICALLY FILED  
DOC #: _____  
DATE FILED: May 05 2020

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AXAR MASTER FUND, LTD., MAN GLG SELECT  
OPPORTUNITIES MASTER LP,

          *Plaintiffs-Appellants*,

                    -v-                                                        19-1132-cv

BRYAN K. BEDFORD, JOSEPH P. ALLMAN,

          *Defendants-Appellees*,

---

[*] Judge Paul A. Engelmayer, of the United States District Court for the Southern District of New York, sitting by designation.

MANDATE ISSUED ON 05/05/2020

MARK L. PLAUMANN, ROBERT L. COLIN,
DANIEL P. GARTON, NEAL S. COHEN,
                   *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | SHARAN NIRMUL, Kessler Topaz Meltzer & Check, LLP, Radnor, Pennsylvania. |
| FOR DEFENDANTS-APPELLEES: | JAY B. KASNER (Scott D. Musoff, Michael M. Powell, Austin R. Winniford, *on the brief*), Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York. |

Appeal from the United States District Court for the Southern District of New York (Kaplan, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment and order of the district court are **AFFIRMED**.

Plaintiffs-appellants Axar Master Fund, Ltd., and Man GLG Select Opportunities Master LP ("plaintiffs") appeal from a judgment entered March 30, 2018, dismissing their securities fraud claims, under sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), and common law fraud claims against defendants-appellees Bryan K. Bedford and Joseph P. Allman ("defendants"). Plaintiffs also appeal a post-judgment order entered March 27, 2019, denying their motion to amend, or alternatively set aside, the judgment pursuant to Federal Rules of Civil Procedure 59(e) and 60(b) and for leave to file an amended complaint pursuant to

2

Federal Rule of Civil Procedure 15(a). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

The facts alleged in the complaint are assumed to be true. Plaintiffs are investment funds and minority shareholders of Republic Airways Holdings Inc. ("Republic"), a regional airline that carries passengers for several major airlines. Plaintiffs' suit arises from Republic's difficulties in flying the hours required under its codeshare agreements with three major airline partners, including Delta Airlines ("Delta"). As a consequence of these operational struggles, Republic attempted to modify its codeshare agreements with its partners. Delta initially objected, but eventually agreed to reduce Republic's flying hours. Between May and August 2015, Republic made a variety of statements both in its filings with the Securities Exchange Commission (the "SEC") and on quarterly earning calls that described its ongoing discussions with partners to reduce its flying schedules, including a disclosure in a May 2015 SEC filing that Republic had "agreed with our [partners] to reduce schedules . . . in the second half of 2015." App'x at 28.

In October 2015, Delta sued Republic for breach of contract based on Republic's failure to maintain adequate pilot staffing levels under the codeshare agreement. In response to the litigation, Republic made several public statements refuting Delta's allegations that it was in breach of contract and characterizing Delta's lawsuit as "unfounded" and "without merit." App'x at 33, 34. Republic disclosed in an

3

SEC filing that it was working with its codeshare partners "to reduce levels of flying during the second half of 2015 and beyond," and also warned that there could be "no assurance that these efforts to reach consensual agreements . . . [would] be successful." App'x at 161.

On February 25, 2016, Republic filed for bankruptcy protection under Chapter 11.  On March 24, 2016, Republic restructured its agreement with Delta, modifying the compensation and operational terms between the parties, affording Republic debtor-in-possession financing, providing for dismissal of Delta's breach of contract claims, and awarding Delta a $170 million unsecured claim in the bankruptcy proceeding.  In response to the public announcement of the Delta restructuring, Republic's share prices increased.  Plaintiffs -- through an ad hoc committee of equity holders -- objected to Delta's $170 million unsecured claim as an overpayment to resolve the litigation that Republic had asserted was meritless.  The bankruptcy court rejected plaintiffs' objection and approved the settlement in its entirety.  Plaintiffs appealed and a district court affirmed the bankruptcy court's order.

Plaintiffs filed the instant suit on January 20, 2017, alleging that Republic -- through statements made by its executives and filed with the SEC -- misrepresented both its beliefs that the Delta litigation was meritless and the status of negotiations with Delta and other codeshare partners.  Plaintiffs asserted securities and common law

4

fraud claims and control person liability against defendants. Defendants moved to dismiss the complaint for failure to plead with particularity and failure to state a claim.

On March 29, 2018, the district court granted defendants' motion to dismiss. The district court held that the complaint failed to state a claim for securities fraud because plaintiffs failed to allege an actionable misrepresentation and, in the alternative, failed to plead loss causation, and that the same deficiencies required dismissal of plaintiffs' common law fraud and control person liability claims. On April 27, 2018, plaintiffs filed a motion to amend, or alternatively to set aside, the judgment pursuant to Rules 59(e) and 60(b) and for leave to file an amended complaint pursuant to Rule 15(a). On March 26, 2019, the district court issued a memorandum opinion denying plaintiffs' motion in all respects. This appeal followed.

## DISCUSSION

### I. *Dismissal of Fraud Claims*

We review *de novo* a district court's dismissal for failure to state a claim, assuming all well-pleaded factual allegations to be true. *S. Cherry St., LLC v. Hennessee Grp.*, 573 F.3d 98, 103-04 (2d Cir. 2009). To state a claim under Section 10(b) and Rule 10b-5, a plaintiff "must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Pac Inv. Mgmt. Co. v. Mayer Brown LLP*,

5

603 F.3d 144, 151 (2d Cir. 2010) (quoting *Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

Even assuming without deciding that plaintiffs plausibly alleged an actionable misrepresentation, we affirm the district court's dismissal of plaintiffs' complaint on the ground that plaintiffs failed to plausibly allege loss causation. "Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks omitted). A plaintiff can establish loss causation by showing that "the loss was foreseeable and caused by the materialization of the risk concealed by the fraudulent statement." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 107 (2d Cir. 2007). To plead loss causation, plaintiffs must allege "that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001). In other words, plaintiffs must allege "that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell*, 396 F.3d at 173.

Plaintiffs failed to sufficiently allege loss causation because they alleged no plausible connection between the alleged misrepresentations and their claimed investment loss. Plaintiffs asserted that defendants' purported misstatements concealed a risk that Republic's equity would be diluted by claims granted to Delta and other

6

partners during bankruptcy reorganization, and that this alleged risk materialized when Republic entered into those restructuring agreements. Plaintiffs vaguely asserted that because the settlement agreements granted unsecured claims to Republic's codeshare partners exceeding Republic's equity value at the beginning of the bankruptcy proceedings, this resulted in "direct and proximate" losses.[1] In other words, plaintiffs argued that the sum of the settlement agreements would "dilute [the] equity recovery on a dollar-for-dollar basis" of "plaintiffs' existing investments in Republic." App'x at 53. This dilution theory was fundamentally flawed, however, because plaintiffs failed to allege how Republic's reorganization plan caused them any economic injury that is not wholly speculative. As the district court observed, "[p]laintiffs fail[ed] to allege that they will receive even one cent less than they would have received had Republic not entered into the settlements." S. App'x at 29. We find persuasive the district court's conclusion in the separate bankruptcy proceeding that the restructuring settlement would impact plaintiffs only if "in the absence of the additional $170 million allowed unsecured claim, [Republic's] valuation indicates that there is hope for some

---

[1]  Specifically, plaintiffs alleged that "Republic's purported equity value of $590 million as of January 31, 2016 would be substantially offset by at least $975 million to potentially over $1 billion dollars in claims in the Bankruptcy Case." App'x at 52-53. Plaintiffs pointed to three settlement agreements: (1) the March 24, 2016 settlement with Delta, granting Delta an unsecured claim of $170 million; (2) the May 27, 2016 settlement with United Airlines, granting United a $193 million general unsecured claim; and (3) the September 2, 2016 settlement with American Airlines, granting American a $250 million general unsecured claim. According to plaintiffs, the "$613 million of previously undisclosed liabilities" diluted the value of plaintiffs' investments in Republic, thus resulting in "substantial losses." App'x at 53.

7

recovery by the equity holders. But [plaintiffs] cannot make such a showing and have not even tried. . . . [Plaintiffs] have no idea whether [Republic] is already sufficiently under water that even in the absence of this settlement they would never stand to recover a penny." *In re: Republic Airways Holdings Inc.*, No. 16-cv-3315 (KBF), 2016 WL 2621990, at *2 (S.D.N.Y. May 6, 2016). Accordingly, after analyzing plaintiffs' dilution theory, the district court correctly dismissed the complaint on the alternative ground that plaintiffs failed to plausibly allege loss causation.[2]

**II.** *Denial of Leave to Amend, or Alternatively to Set Aside, the Judgment and of Leave to Amend the Complaint*

Next, plaintiffs argue that the district court erred in denying its motion to amend, or alternatively set aside, the judgment pursuant to Rules 59(e) and 60(b) and for leave to file an amended complaint pursuant to Rule 15(a). "A party seeking to file an amended complaint postjudgment must first have the judgment vacated or set aside pursuant to Fed. R. Civ. P. 59(e) or 60(b)." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Leave to amend shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be granted, however, where the proposed amendments would be futile in that they could not cure the complaint's

---

[2] Because the elements of claims for federal securities fraud and New York common law fraud are nearly identical, we also affirm the district court's dismissal of plaintiffs' common law fraud claims after concluding that plaintiffs failed to state a claim for federal securities fraud. *See, e.g., Newman v. Family Mgmt. Corp.*, 530 F. App'x 21, 24 (2d Cir. 2013) (summary order). Plaintiffs have waived their control person liability claim under Section 20(a) of the Securities Exchange Act by failing to challenge the district court's dismissal of that claim on appeal.

8

deficiencies. *Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014). Where the district court's denial of leave to amend "is based on a legal interpretation, such as futility," we review the district court's ruling *de novo*. *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164 (2d Cir. 2015). We review the district court's denial of plaintiffs' motion to alter or vacate the judgment under Rules 59(e) or Rule 60(b) for abuse of discretion. *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 150 (2d Cir. 2008) (Rule 59(e)); *ISC Holding AG v. Nobel Biocare Fin. AG*, 688 F.3d 98, 109 (2d Cir. 2012) (Rule 60(b)). It is a well-established rule, however, "that an appellate court will not consider an issue raised for the first time on appeal." *In re Nortel Networks Corp. Sec. Litig.*, 539 F.3d 129, 132 (2d Cir. 2008) (internal quotation marks omitted); *see also Wal–Mart Stores, Inc. v. Visa U.S.A.*, Inc., 396 F.3d 96, 124 n.29 (2d Cir. 2005) ("The law in this Circuit is clear that where a party has shifted his position on appeal and advances arguments available but not pressed below, . . . waiver will bar raising the issue on appeal.").

In this case, plaintiffs waived any argument that an amended complaint would satisfy loss causation when, in opposing the motion to dismiss, they failed to argue (and indeed explicitly disclaimed) the artificial inflation theory they now attempt to replead. As the district court noted, "plaintiffs clearly and unequivocally disclaimed this [artificial inflation] theory of loss causation in numerous other instances prior to the entry of judgment." S. App'x at 38-39 n.13. Specifically, plaintiffs represented below that they "are not seeking to recover their out-of-pocket losses attributable to the

9

artificial inflation of the Company's shares at the time of their purchases," District Ct. Docket No. 31 at 34, and that they "do not allege 'artificial inflation' or seek application of the 'fraud on the market' doctrine," *id.* at 32. Moreover, during oral argument, plaintiffs represented to the district court that "[w]e are not alleging that our loss results from inflation of the share price at the time we purchased." App'x at 214.

Accordingly, the district court did not abuse its discretion in rejecting plaintiffs' motion for the separate reason that they failed to satisfy the stringent standards for granting reconsideration under Rule 59 or vacatur under Rule 60(b).[3] *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (A Rule 59(e) motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."); *Kotlicky v. U.S. Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) (in applying for relief under Rule 60(b), the movant must present

---

[3] Because we conclude that the district court did not abuse its discretion in rejecting plaintiffs' motion to alter or vacate the judgment under Rules 59(e) or Rule 60(b), we need not reach the merits of plaintiffs' repackaged theory of loss causation based on the artificial inflation of Republic's stock.

Finally, we affirm the district court's denial of plaintiffs' motion to amend the complaint pursuant to Rule 15(a) because there is no valid basis to vacate the previously entered judgment. *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 930 F.2d 240, 245 (2d Cir. 1991) ("Unless there is a valid basis to vacate the previously entered judgment, it would be contradictory to entertain a motion to amend the complaint."). As discussed above, plaintiffs had the opportunity to amend their pleadings to incorporate the artificial inflation theory before the entry of judgment and chose not to do so. Therefore, the district court did not err in denying plaintiffs' motion to amend. *See State Trading Corp. of India v. Assuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990) ("When the moving party has had an opportunity to assert the amendment earlier, but has waited until after judgment before requesting leave, a court may exercise its discretion more exactingly.").

"highly convincing" evidence, "show good cause for the failure to act sooner," and show that "no undue hardship [would] be imposed on other parties").

\* \* \*

Accordingly, we **AFFIRM** the judgment and order of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

11